## No. 5074.

### ROBINSON MUMFORD v. MRS. S. T. BOWMAN AND HUSBAND.

The acceptance of a succession is express, when in an authentic or private instrument, or in some judicial proceeding, the purpose of the heir is declared in terms so clear and distinct that no doubt can exist of his intention to accept under the responsibilities that result from an acceptance pure and simple. To incur the liability arising from an acceptance pure and simple, something more than styling himself heir in some written act, authentic or judicial, must appear in the instrument, in order to bind the party absolutely to pay all the debts of the succession out of his own means.

Both in the express and tacit acceptance it must be made clear, that it was the intention of the party assuming the quality of heir to abide the disadvantages, if any should arise, of accepting simply and purely, as well as to enjoy the benefits that might accrue from it. In the one case, the intention is to be found in a fair interpretation of the terms and expressions of written instruments; in the other, it is to be inferr d from acts, the motives of which can not be ascribed to any other purpose.

The subject matter of the written acts in which, by styling herself heir, it is contended in this case that the defendant became bound for the debts of the succession, presents collateral issues not involving the question of heirship, and in no manner relating to the acceptance of the succession.

The term *heir* has several significations. Sometimes it refers to one who has formally accepted a succession, and taken possession thereof; sometimes to one who is called to succeed, but still retains the faculty of accepting or renouncing, and it is frequently used as applied to one who has formally renounced. Hence, the use of the word *heir* in itself is of but little moment. It is the *object* and *intent* manifested by its use that is the material thing.

APPEAL from the Seventh Judicial District Court, parish of West Feliciana. *Hewes, J. W. W. Leake, Race, Foster & E. T. Merrick,* for plaintiff and appellant. *Thomas Butler, William H. Hunt,* for defendant and appellee.

TALIAFERRO, J. The plaintiff in this case having a large claim against the succession of Daniel Turnbull, deceased, obtained a judgment upon it. He received as his final distributive share as a creditor the sum of $1519 93, the estate being insolvent. He now sues Mrs. Bowman, a daughter of Daniel Turnbull, alleging that as heir of her

father she accepted his succession purely and simply, and has thereby rendered herself liable for its debts. He sets out that she has assumed the quality of heir in certain written acts and judicial proceedings which he refers to. He also charges that the defendant has taken possession of certain sugar kettles and a quantity of fire bricks, the property of the succession, and converted the same to her own use without accounting for their value; and by this act he alleges she has become liable as an heir accepting purely and simply.

The answer is a general denial. The defendant specially denies that she ever accepted the succession as charged by the plaintiff.

There was judgment in favor of, the defendant, and the plaintiff has appealed.

The judge *a quo* has diligently reviewed the several written acts and judicial proceedings in which the plaintiff alleges the defendant has assumed the character of heir, and from his reference to them we give their character:

"The first written act relied on by the plaintiff, as amounting to an express acceptance, is the one marked A, and appears to be a compromise between defendant and the representatives of her deceased brother, who but for their renunciation would have been their coheirs. This compromise was based upon a suit, No. 72, then pending in the parish court, wherein the defendant was plaintiff against Mrs. Caroline B. Turnbull, natural tutrix of her (the plaintiff's) minor nephews. It sought to force them to a collation and partition with her of a large donation." The judicial proceedings adduced in evidence by the plaintiff are marked B, C and D. "The first of these is an opposition to the application of Mrs. Caroline B. Turnbull, tutrix, for letters of administration on the succession of Daniel Turnbull; claims that her mother is the qualified executrix, and that if an administrator has to be appointed, she, the opponent, is entitled to it by preference over all others.

The next is an intervention in the suit of Mrs. Lapice, a creditor, to annul and set aside a certain judgment of homologation of an account of the executors of Daniel Turnbull's estate, in which Mrs. Bowman joins the executrix and acquiesces in the judgment of homologation.

In the last she opposes some very large claims against the succession, placed on a tableau or classification of debts by the executrix. In these and other judicial proceedings the defendant styles herself "the legal forced heir of her father, Daniel Turnbull;" "the only heir of said deceased of age," and "one of the legal forced heirs of her father, Daniel Turnbull, and a legatee under his will."

The only inquiry in this case is, has the defendant accepted the succession of her father purely and simply in the manner contemplated.

by law to render an heir personally liable, out of his individual property or means, for the debts of the estate which he accepts? Article 988 of the Civil Code declares: "The simple acceptance may be either express or tacit. It is express when the heir assumes the quality of heir, in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding. It is tacit when some act is done by the heir which necessarily supposes his intention to accept, and which he would have no right to do but in his quality of heir."

We understand that the acceptance is express when in an authentic or private instrument, or in some judicial proceeding, the purpose of the heir is declared in terms so clear and distinct that no doubt can exist of his intention to accept under the responsibilities that result from an acceptance pure and simple. We imagine that to incur the liability arising from an acceptance pure and simple, something more than merely styling himself heir in some written act, authentic or judicial, must appear in the instrument in order to bind the party absolutely to pay all the debts of the succession out of his own means. The responsibility of accepting purely and simply would in many cases prove serious, and in some it might, as in the case under consideration, be ruinous. Therefore it would seem that in an express acceptance, the purport of the instrument must be clear that the party intended, without legal formalities, to assume all the responsibilities of a pure and simple acceptance, as well as all the advantages of heirship. This, we think, becomes apparent by considering the last clause of the article 998 and the article 990, which treat of the tacit acceptance. The tacit acceptance is a matter of inference, but to warrant the inference "it is necessary that the intention should be united to the fact, or rather be manifested by the fact, in order that the acceptance be inferred."

Both in the express and tacit acceptance it must be made clear that it was the intention of the party assuming the quality of heir to abide the disadvantages, if any should arise, of accepting purely and simply as well as to enjoy the benefits that might arise from it. In the one case, the intention is to be found in a fair interpretation of the terms and expressions of written instruments; in the other, it is to be inferred from acts, the motives of which can not properly be ascribed to any other purpose.

To revert now to the written instruments in which it is alleged the defendant assumed unqualifiedly the character of heir, we find by the document A, before referred to, that the donation which was required to be collated was made in 1854 by Daniel Turnbull and his wife to their son, William Turnbull, and consisted of a large tract of land and a great number of slaves. This donation was made at a time when

the donor was in affluent circumstances, and most likely before the creditors of Daniel Turnbull became such, for none of them have complained of it. This donation contained a stipulation that its value was to be collated with coheirs on the decease of the donors. The representatives of the donee and their coheir were alone concerned. The property donated did not belong to the succession of Daniel Turnbull. His creditors had no interest in it. The proceedings had no relation to his succession. The creditors of Daniel Turnbull were not parties to these proceedings, and were not bound by them. Then it is of no moment to them, the defendant's styling herself the heir of Daniel Turnbull. It is palpable that in this act of compromise there is nothing showing her intention to accept his succession purely and simply. Neither is there evinced in the judicial proceedings already referred to, marked B, C and D, the intention of the defendant to accept purely and simply the succession of her father. That succession, by one of the great events of the late war, became hopelessly insolvent by the general emancipation of slaves. The greater part of the ample fortune of Daniel Turnbull consisted of slaves. His lands depreciated in value. His large plantation, like many others, became a wreck. These facts were well known to the defendant. It is shown that she never acted in business matters, sounding in law or legal proceedings, without legal advice.

On the death of Daniel Turnbull, an inventory was made of his estate. The surviving widow, executrix of the will, together with her co-executor, took the estate in charge. An account was filed by them in March, 1865, and homologated by the clerk, and Towles, the executor, was discharged. In 1867 the executrix filed a provisional account, and in 1872 a final account and tableau of distribution, which were homologated.

Thus, then, it is seen that there was an inventory legally made of the succession of Daniel Turnbull; that it has been administered by the executrix, and its assets distributed according to law. It has not been shown that the defendant has ever had possession of the effects. But if she had taken possession, it may well be questioned whether the formal inventory of the succession, made under judicial authority, would not protect her from liability beyond its assets, according to article 1006 of the Civil Code: "An heir of age accepting simply is bound personally for all the debts, * * * unless before acting as heir he make a true and faithful inventory of the effects of the succession," etc.

The allegation that the defendant caused to be removed from the plantation of the estate sugar kettles and a lot of fire bricks is not sustained by the evidence. On the other side, it is shown that those

articles were removed by the consent of the executrix, who authorized the husband of the defendant to remove them, and that the removal was unknown to the defendant.

The subject matter of the written acts, in which, by styling herself heir, it is contended the defendant became bound for the debts of the succession, presents collateral issues not involving the question of heirship, and in no manner relating to the acceptance of the succession. In the language of the learned judge who decided this case in the court *a qua,* "the term *heir* has several significations. Sometimes it refers to one who has formally accepted a succession and taken possession thereof; sometimes to one who is called to succeed, but still retains the faculty of accepting or renouncing, and it is frequently used as applied to one who has formally renounced. C. C. 1017 et al. Hence the use of the word heir is in itself of but little moment. It is the object and intent manifested by its use that is the natural thing. Thus in France it has been held that 'when I give through an officer of the law a legal notification to my cousins, that I also am an heir of our deceased uncle, and that I object to the seals being raised without notice to me, it is clear that I do not accept, although I have taken the title and quality of heir, for here the word heir evidently signifies capable of inheriting.' 3 Marcadé, Tit. Des Suc., No. 204, and decisions there quoted."

\*        \*        \*        \*        \*        \*        \*        \*        \*

"That when the effects of the succession have never been in the possession of the heir, but are administered by another, under an inventory duly made, the heir who has neither accepted simply nor renounced, but remains silent, is, after full administration and payment of debts and legacies, entitled to the residuum; that being thus entitled to this residuum, he has such an interest in increasing it that he may intervene and oppose an account of the administrator, which allowed claims not due by the succession, and, if he can, defeat them; that although in this judicial proceeding he style himself 'heir,' he is presumed to appear as beneficiary heir, and does not thereby incur the penalty pronounced by article 998 of the Civil Code."

We see no error in the decree of the district court.

Judgment affirmed.

---

HOWELL, J., *dissenting.* The express acceptance is, "when the heir assumes the quality of heir, in an unqualified manner, in some authentic or private instrument, or in some judicial proceeding." R. C. C. 988, ¶ 2.

When Mrs. Bowman, in June, 1866, intervened in the judicial proceedings relating to her father's succession, she did so as heir, assuming

the quality of heir, and opposed certain other judicial proceedings, which she believed would impair or prejudice her rights as heir, and in doing this she did not qualify in any manner the assumption or assertion of her heirship.   She declared in emphatic or unqualified terms "that she is one of the legal forced heirs of her father, Daniel Turnbull, deceased, and a legatee under his will," and in another place "she admits that she is the only forced heir of said deceased of age," acquiesces in the judgment homologating the account of the executrix, and asks that the demand of a creditor for annulling said judgment be dismissed.   These are proceedings and demands which she could institute and urge only as heir, and were so instituted and presented in the belief at the time, as I think, that the succession would prove to be valuable.

Having assumed the quality of heir, in an unqualified manner, in those judicial proceedings, after the inventory was made, she became liable for her share of the debts, and could not afterwards be relieved by her own acts.   The articles 1010 et seq., cited by her counsel, do not, in my opinion, apply to the state of facts which exists in this case.

I think the court has given an interpretation to article 988 of the Code which its terms do not sustain, and very different from the one given to it in the case of Le Cesne v. Cottin, 2 N. S. 475.

Rehearing refused.