(107 So. 302)

No. 25895.

FISHER v. KANSAS CITY, S. & G. RY. CO. et al.

(Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. Nuisance ☞9—Owner of lot, on which oil from railroad shops overflowed from municipal drain, entitled to damages.

Owner of lot, on which oil from railroad shops flowed when municipal drainage system was obstructed *held* entitled to damages, though railroad's drain carried it beyond his property to municipal drain before overflow occurred.

2. Appeal and error ☞878(6).

Judgment could not be amended in favor of prevailing party, where no answer to appeal was filed.

3. Nuisance ☞50(2)—Loss of rental of houses formerly on property but destroyed by fire not considered in determining damages.

Loss of rents from houses which had been on property at one time but had been destroyed by fire cannot be considered in determining loss of rentals as basis for damages to property from nuisance.

4. Appeal and error ☞1175(1)—Where amount of damages cannot be determined, Supreme Court will dismiss as in case of nonsuit.

Where amount of damages to property because of oil drained from railroad shops cannot be determined, Supreme Court has no alternative but to dismiss demand for damages, as in case of nonsuit.

5. Nuisance ☞19—Draining oil from railroad shops and yards so as to injure adjoining property properly enjoined.

Drainage of oil and waste from railroad shops and yards in such manner as to overflow and injure adjoining property was properly enjoined.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by James F. Fisher against the Kansas City, Shreveport & Gulf Railway Company and another. From a judgment for plaintiff, defendants appeal. Judgment amended, and, as amended, affirmed.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellants.

Hugh Fisher, of Shreveport, for appellee.

OVERTON, J. Plaintiff is the owner of lots 17 to 24, inclusive, of block 12 of the Curris subdivision of the city of Shreveport. One of the defendants, the Kansas City, Shreveport & Gulf Railway Company, is the owner of certain lots in the immediate vicinity of plaintiff's property, upon which it has

constructed its general shops, roundhouse, and terminal switch yards. The remaining defendant is the Kansas City Southern Railway Company, and operates said car shops and other property under a traffic agreement entered into with its codefendant.

Plaintiff complains that the Kansas City, Shreveport & Gulf Railway Company, in constructing the improvements mentioned above on its property, so changed the natural drainage therefrom onto the property owned by him as to make the drainage more burdensome in every particular. Plaintiff also complains that the Kansas City Southern Railway Company, in the operation of the property owned by its codefendant, permits, and has for some time permitted, over his protests, and to the knowledge of its codefendant, oil, water, and waste to flow continuously from the property operated by it through an artificial drain constructed by its codefendant onto his property, where a great quantity thereof accumulates and stands, thereby creating a nuisance.

The prayer of plaintiff's petition is that a writ of injunction issue and be perpetuated enjoining defendants from draining said oil, water, and waste onto his property, for judgment abating said nuisance, and for further judgment against defendants, in solido, for $5,000—$2,000 of which is for depreciation in the market value of said property and the balance for loss in rentals.

Defendants in due course filed their answer, and also a plea of prescription of one year against plaintiff's demand for the damages, sued for by him, if any he suffered. The case was tried and judgment rendered against defendants declaring the drainage from their general shops, roundhouse, terminal and switch yards of oil, water, and refuse upon the property of plaintiff, and the permitting of the same by them to accumulate and stand on plaintiff's property, a nuisance, ordering the same abated, and directing the issuance of a permanent writ of injunction enjoining defendants from further maintaining said nuisance. Judgment was also rendered sustaining the plea of prescription of one year filed by defendants as to all damages suffered by plaintiff prior to one year preceding the filing of his suit, and condemning defendants, in solido, to pay plaintiff $1,044, with legal interest thereon from judicial demand, as damages suffered by plaintiff during the year immediately preceding the filing of his suit. Defendants have appealed.

The evidence discloses that the natural drainage from the property owned by the Kansas City, Shreveport & Gulf Railway Company, and operated by its codefendant, is over the property of plaintiff; that the Kansas City, Shreveport & Gulf Railway Company some years ago, in constructing its shops, roundhouse, and yards, constructed an artificial drain through the property of plaintiff, to a ditch, which was, and still is, a part of the municipal drainage system on Norma street adjoining plaintiff's property, and that the Kansas City Southern Railway Company, in operating said shops, roundhouse, and yards, permits, and has permitted for several years or more, oil to escape, which finds its way, together with water, into the artificial drain constructed by its codefendant. While the evidence is conflicting in that respect, yet the clear preponderance of it shows that, at times, and not infrequently, oil and water ooze out from the joints of the pipe out of which the drain is constructed, or from defects or broken places in the drain, onto plaintiff's premises. The evidence also shows that plaintiff's property is partly low, that the drainage on Norma and Laurel streets frequently becomes obstructed, it is said, by débris from the streets, and that the obstructions, during heavy rains, cause a flooded condition in the immediate vicinity of the premises owned by

plaintiff, and, as a consequence, a good part of his property goes under water; and that a good part of the oil drained into the ditch is thrown on such occasions on his property, much of which remains there after the water recedes. As a result of the oozing of oil through the joints of, or through defects in, the artificial drain, and the backing of oil during the flooded conditions, on plaintiff's premises, two-thirds of his property at times, and at other times a smaller, though considerable space, is stained or coated with oil. Plaintiff has repeatedly protested against this condition. Defendants shortly after this suit was filed extended the artificial drain 50 feet—that is, from a point on the west side of Norma street to a point on the east side thereof—but apparently without bettering conditions much.

Defendants contend that the oil found on plaintiff's property did not, in part, ooze through the joints of the artificial drain, or through any defects therein. But, as we have said, the preponderance of the evidence shows that in part it did and does so escape. Defendants do not deny that parts of plaintiff's property are found, from time to time, coated with oil, but their contention is that all of the oil found on his premises is put there by the water backing up on his property after heavy rains, and then only, when the municipal drainage in that vicinity, especially at the culvert on Laurel street, is obstructed. Nor do we understand that defendants deny that the oil found on plaintiff's premises came indirectly from their property, but their contention is that their permitting it to escape, whether negligently or otherwise, is not the proximate cause of its finding, from time to time, its way to those premises, and of the damage, if any, resulting to plaintiff's property, for they contend that the oil was drained beyond his property, and was put on his premises by an intervening cause for which they are not responsible, and over which they have or had no control.

[1] It may be said, however, in answer to this contention of defendants, that, while it is true that most of the oil that finds its way from defendants' premises to plaintiff's is carried there by the water during or after heavy rains when the municipal drainage is obstructed, after the oil has been drained beyond plaintiff's property still this condition has existed, including the frequent obstruction of the drainage in that vicinity, to the knowledge of defendants, for several years. Hence, day by day, as defendants permitted the oil to escape and drain into the ditch, they knew what the probable consequence would be. Under these circumstances, we think that plaintiff is entitled to compensation for such damages as he may have suffered, which are not prescribed.

While we entertain no doubt that plaintiff has suffered some damage, still when we attempt to fix the amount we find nothing sufficiently definite in the record to serve as a basis for fixing it.

[2] As we have seen, the trial court sustained the plea of prescription of one year as to all damages that accrued more than a year preceding the filing of this suit. Plaintiff did not appeal from the judgment rendered, but is the appellee herein. He has filed no answer to the appeal praying that the judgment be amended by overruling the plea of prescription. Hence the judgment appealed from cannot be amended, in his favor, by overruling the plea of prescription, even if we thought the plea should be overruled. Hence all damages that plaintiff may have suffered more than one year prior to the institution of this suit have passed out of the case, and the only damages that can be allowed are those suffered during the year immediately preceding the institution of these proceedings.

[3, 4] Considering the demand for damages further, it should be said that at one time there were four houses on plaintiff's property. One of these was torn down three

or four years prior to the institution of this suit. Two of the others were destroyed by fire about the same time. The only house remaining on the property is rented, and, so far as we are able to say, was rented during the year preceding the filing of this suit. Plaintiff has attempted to establish his damages for loss of rentals as if the three houses first mentioned were still on the property. It is obvious that he lost no rents on them for the year preceding the filing of this suit, for the houses were not then on the property to be rented, and the mere fact of their having been there at one time, and rented, does not constitute a sufficient basis for determining the loss of rentals for the year preceding the institution of this suit. As relates to the only house remaining on the premises, it does not appear what, if any, the loss of rentals on it was during the year mentioned on account of the conditions named. As relates to the only demand for damages remaining, the one for the depreciation in the market value of the property, we are unable to say from the evidence what the depreciation was on account of the continuation of the drainage of oil during the year in question. Hence we see no alternative but to dismiss plaintiff's demand for damages, for the year preceding the institution of this suit, as in case of nonsuit.

[5] However, the evidence satisfies us that defendants are responsible for the creation of a nuisance on plaintiff's property, and that the nuisance ought to be abated. It also satisfies us that the injunction that issued should be perpetuated to the extent that it was by the lower court. The defendants are without right to permit the drainage of their oil and waste in such manner as to injure plaintiff's property. The judgment appealed from therefore will be affirmed in these respects.

For the reasons assigned, the judgment appealed from is amended by dismissing, as in case of nonsuit, plaintiff's demand for damages for the year preceding the institution of this suit; and in all other respects said judgment is affirmed, appellee to pay the costs of this appeal.