No. 3306

Second Circuit

———

KEITH v. LEE

———

(March 24, 1930. Opinion and Decree.)

———

Craig, Bolin & Magee, of Mansfield, attorneys for plaintiff, appellee.

Lee & Williams, of Mansfield, attorneys for defendant, appellant.

DREW, J. Sharpey Pouncey died intestate on or about March 7, 1922, his wife having died in the year 1915. He left, as his sole and only heirs, Mary Starks, John Henry Pouncey, Sallie Pouncey, Rosa Lee Graham, Sharpey Pouncey, Jr., Tom Pouncey, Charity Williams, Arilla Brown, Caroline Pouncey, and Julia Pouncey, the last two being minors, all residents of DeSoto parish, La.

At the time of his death Sharpey Pouncey owned 80 acres of land described as the east half of the southwest quarter of section twenty-two, township fifteen north, range fourteen west, DeSoto parish, Louisiana.

At the time of his death, two of his children, namely, Tom Pouncey and Sallie Pouncey, were living with him, and continued to live on the place, being the 80 acres in question, until an administration was had, and during that time they continued to farm the place the same as they had during the lifetime of their father. The other children and heirs were not living with Sharpey Pouncey at the time of his death, and did not thereafter at any time live on the place or have anything to do with working it.

On February 25, 1925, nearly three years after the death of Sharpey Pouncey, a brother of the deceased, by the name of Tom Pouncey, alleging himself to be a creditor of the decedent, initiated administration proceedings which resulted in his appointment as administrator of the succession of Sharpey Pouncey, No. 11525 on the docket of the Eleventh Judicial District Court for De Soto parish, La. His appointment was made without any opposition having been made thereto.

On March 19, 1925, on the application of the said administrator, a commission was issued to sell the 80 acres of land to pay the debts of the succession and charges of administration. The property was advertised for sale by the sheriff of De Soto parish; the sale to take place on May 2, 1925.

On the very day the property was to have been sold, John Henry Pouncey filed suit to enjoin the sale, and attacking the capacity of the administrator. He alleged that he was not informed of the real purpose of the sale until that day. A temporary restraining order was granted, preventing the sale. After trial of the said suit, an exception of no cause of action was sustained to that part of the petition attacking the administrator and asking for his removal, but maintaining and perpetuating the injunction; the commission under which the property was advertised having issued prematurely. This judgment was rendered May 16, 1925.

Under date of June 4, 1925, another commission to sell was issued in the same matter, and the property advertised to sell on

July 18, 1925. On the very day of sale, five of the heirs, being the same five who are co-defendants with E. P. Lee in the present suit, presented to the court a petition seeking to enjoin the sale, alleging that the petitioners did not ascertain until the day before that the said property was being advertised for sale, and asked for a restraining order; they also asked for the removal of Tom Pouncey as administrator for various grounds therein alleged. The court refused to sign the restraining order, giving the following reasons:

"The above petition was presented to me with request for the signing of the order therein prayed for on Friday night, July 17th, 1925, and after considering same, and being of the opinion that the petition was presented too late, as the administrator had been qualified after no opposition was filed by the parties who lived in the parish, and the further reason that by a judgment in another proceeding this court had rejected the demand of one of the parties to this petition to annul the appointment of the administrator on other grounds."

On July 18, 1925, the day of the sale of said property, a mortgage was executed by five of the defendants, in favor of any future holder, for $300, covering a one-half interest in the 80 acres of land to be sold. This mortgage was filed for record at 11 o'clock a. m., the very hour of sale. It was passed before L. H. Bell, Jr., notary public, Mr. Bell being at that time a law partner of Mr. E. P. Lee, one of the defendants in this suit, and the firm of lawyers that had represented the five Pouncey heirs in the attempt to secure a restraining order.

The 80 acres of land was sold during the legal sale hours on that day and adjudicated to W. H. Keith and a proces verbal was filed accordingly by the sheriff.

On September 30, 1925, Tom Pouncey and Sallie Pouncey, the two heirs who had remained on the place since their father's death, signed a lease contract in favor of W. H. Keith for rent of the 80 acres of land for the year 1926.

On October 22, 1925, W. H. Keith deeded the 80 acres of land to his father, Perry P. Keith, the plaintiff in this suit, and it is shown that W. H. Keith was really acting for his father in buying the land and the transfer was made accordingly.

Tom Pouncey and Sallie Pouncey paid the rent on the place for the year 1926, and Tom Pouncey moved away from the place. Sallie remained on the place, and although she entered into no rent or lease contract, did pay the rent for the year 1927.

On March 26, 1927, Elmo P. Lee, one of the defendants herein, addressed a letter to Perry P. Keith, Sr., demanding of him to pay the said $300 note held by E. P. Lee or surrender the property, stating that the five Pouncey heirs who had made the note had refused to pay same. In part, the letter reads as follows:

"The property described in said act of mortgage and hereinabove described, is now owned by you, and I hereby demand of you, as third possessor of said property, the payment of said note, together with interest and all costs, as above set forth, or the surrender of the aforesaid property to satisfy said note, interest and all costs, as the said John H. Pouncey, Tom Pouncey, Sallie Pouncey, Mary Starks and Rosa Lee Graham refused to pay same.
"This demand is made upon you as required by law, and you are hereby notified that more than thirty days have elapsed since amicable demand was made upon John H. Pouncey, Tom Pouncey, Sallie Pouncey, Mary Starks and Rosa Lee Graham, and that if said note, interest and costs, as secured by the said mortgage herein referred to, is not paid by you with-

in ten days, from service of this notice upon you, I will institute legal proceedings against you, as third possessor in the manner provided by law."

On May 25, 1927, Elmo P. Lee, one of the defendants in the present suit, filed against the five heirs who had signed the $300 mortgage, executory process, attempting to foreclose the said mortgage. Order of seizure and sale was issued and the property advertised for sale by the sheriff for August 6, 1927.

On July 19, 1927, Perry P. Keith, the plaintiff herein, filed this suit against Elmo P. Lee, the holder of said mortgage note, and the five heirs of Sharpey Pouncey who executed the said mortgage, namely, John Henry Pouncey, Tom Pouncey, Sallie Pouncey, Mary Starks, and Rosa Lee Graham. Plaintiff alleges that he is the true and lawful owner and in possession of the 80 acres of land against which the mortgage was executed, and that the defendant Elmo P. Lee is slandering his title to the said property by claiming to be the holder and owner of the certain purported special mortgage, and that the remaining five defendants are slandering the plaintiff's title by having executed and permitted to remain on record the said mortgage purporting to operate against the said eighty acres of land. He alleges damages to the amount of $250 in attorney's fees for bringing this suit and loss of time in attending court and other expenses in connection with the suit. He further alleges that a sale of the property under the writ of seizure and sale would cause him irreparable injury and that an injunction should issue to prevent it.

He prays for a rule nisi upon the defendants Lee and the sheriff commanding them to show cause why a preliminary injunction should not issue restraining the sale of the property, and further prays for judgment canceling the inscription of the said mortgage hereinabove described as registered on the mortgage records of De Soto parish, La., and condemning the defendants to pay him the full sum of $250 as damages.

The preliminary injunction was granted as prayed for on trial of the rule nisi of date July 30, 1927.

Defendants answered denying the title of plaintiff and setting up title in Sharpey Pouncey's heirs, alleging the nullity of the administration proceedings and alleging that the mortgage was a valid mortgage.

The real defense is set up in articles 16, 17, 18, 19, 20 and 21 of defendant's answer, from which we will quote:

"16. Respondents further show that immediately following the death of the said Sharpey Pouncey, Sr., on May 7th, 1922, respondents, who are heirs at law of said decedent, and the other heirs at law of said Sharpey Pouncey, Sr., deceased, named in article 9 hereof, to the actual knowledge of all of the creditors of the said decedent, Sharpey Pouncey, Sr., including said Keith & Sons Company, Ltd., and without objection by any of such creditors of the said decedent, went into the actual corporeal possession of the estate of said decedent, Sharpey Pouncey, Sr., both real and personal, including the real estate described in article one of plaintiff's petition, and remained in such actual corporeal possession to a date subsequent to August 1st, 1925, cultivating the said property in the crops customary to that locality, leasing said land for oil, gas and mineral development, and otherwise using and exercising the rights of ownership and possession thereof.

"17. Respondents further show that the acts of the heirs at law of the said Sharpey Pouncey, Sr., deceased, named in article nine hereof, in taking actual corporeal possession of the said estate, real and personal, of their said deceased father, was both an express and tacit unconditional ac-

ceptance of his succession, such as make such heirs liable pro rata, each for his virile share, for the debts of said Sharpey Pouncey, Sr.

"18. Respondents further show that under the laws of this state, and especially articles 1011 and 1456 of the Revised Civil Code, it was optional with the creditors of said succession, if there were any such creditors, within three (3) months from the said express or tacit unconditional acceptance of said succession by the heirs of said decedent, as alleged in paragraphs 16 and 17 hereof, to compel such heirs to make an inventory of the property of said succession and to give security in the same manner as in the case of acceptance under benefit of inventory, or in default of such security to compel the appointment of an administrator to administer the succession.

"19. Respondents further show that the creditors of said succession, if any there were, and especially the said Tom Pouncey and Keith & Sons Company, Ltd., having full knowledge of said unconditional acceptance of said succession of the said decedent, Sharpey Pouncey, Sr., by the heirs at law of said Sharpey Pouncey, Sr., deceased, named in article nine hereof, and of the actual corporeal possession by such heirs at law of said succession and the property belonging thereto, and especially the real estate described in article one of plaintiff's petition, and having failed in said three months period to take advantage of the provisions of the law as above alleged, were, after such three months' period, without right in law to provoke an administration of said succession, and that the alleged appointment of the said Tom Pouncey as administrator of the succession of the decedent Sharpey Pouncey, was an utter nullity and wholly without effect, and especially as against the said heirs at law of said decedent named in article nine hereof, in possession of the property of said succession under and by virtue of their unconditional acceptance thereof, for the reason that said succession was ended and closed by such acceptance and possession thereof by your petitioners, and, therefore, there was no succession to which an administrator could be appointed.

"20. Respondents further show that the remedy of the creditors, if any, both privileged and ordinary, of said succession, and especially the said Tom Pouncey and Keith & Sons Company, Ltd., subsequent to said three (3) months period, was limited solely to two (2) causes of action first defined in article 1421 of the Revised Civil Code of the state of Louisiana, made a part hereof by reference.

"21. Respondents further show that the pretended sale and pretended deed. executed in conformity thereto of the real estate described in article one of plaintiff's petition as forming a part of the succession and estate of the said decedent, Sharpey Pouncey, which said succession, long prior to said pretended sale, had been ended and closed, as alleged in articles 16 and 17 hereof, was illegal, without authority of law, and was an utter and absolute nullity, and if permitted to stand, will operate to deprive petitioners of their property without due process of law."

They pray for the sale from the succession of Sharpey Pouncey to W. H. Keith to be declared utterly null and void and of no effect and to order the same canceled from the record, recognizing respondents, except Elmo P. Lee, as the owners and entitled to the possession of an undivided one-half interest in the property described in article 1 of plaintiff's petition and the respondent Elmo P. Lee as the owner of a valid mortgage thereon.

On trial of the case in the lower court the plaintiff interposed a plea of estoppel as to Elmo P. Lee, alleging that the said Lee was estopped to deny the ownership of plaintiff and estopped to assert that he is the holder of the mortgage claimed by him, by the formal letter written by him to Perry P. Keith, the plaintiff herein, under date of March 26, 1925; and he also interposed a plea of estoppel as to Tom Pouncey and Sallie Pouncey, for the reason that these two defendants executed a lease contract with W. H. Keith for the lease of the eighty acres in controversy, and paid rent on said land for the years 1926

and 1927, thereby recognizing the said Keith as owner.

He also entered a plea of res adjudicata as to all defendants, except Elmo P. Lee, on the ground and for the reason that in the suit No. 11599 on the docket of the district court in De Soto parish, La., the status of Tom Pouncey, as administrator of the succession of Sharpey Pouncey, was recognized when the court sustained an exception of no cause of action filed on behalf of the administrator, in which the court found that Tom Pouncey was properly appointed administrator and refused to remove him as administrator of the succession. This judgment was rendered in suit No. 11599, on the exception of no cause of action, and which judgment was dated May 16, 1925, and no appeal was taken therefrom and has now become final as to these parties, and therefore the question of Tom Pouncey's administration, whether he was or was not properly the administrator of the succession, has been determined and cannot be raised again by the defendants herein.

The lower court's ruling was that it would consider the pleas when looking over the various documents when deciding the case, reserving to plaintiff a bill of exception to his ruling.

The judgment of the lower court was in favor of the plaintiff and against all of the defendants, declaring as null and void and of no effect the special mortgage covering the 80 acres of land in question, being the mortgage the defendant Lee was attempting to foreclose on, and ordering the inscription of the same canceled from the mortgage records of De Soto parish, La., and perpetuating the preliminary injunction issued herein.

The defendant has appealed to this court. The plaintiff has not appealed from the judgment of the lower court, nor has he answered the appeal.

The judge of the lower court did not sustain either the plea of estoppel or the plea of res adjudicata, and we are therefore powerless to pass on them.

"Where a distinct issue raised by way of defence has been categorically disposed of adversely to the defendants by means of a final judgment which maintaining another defence dismisses the suit, and the plaintiff alone appeals, whilst the defendants neither join in the appeal or answer it, the issue thus decided is eliminated, so far as the appeal is concerned, since the ruling thereon cannot be reversed without amending the judgment appealed from, and the judgment cannot be amended to the prejudice of the appellant and for the benefit of the appellee, who has not asked for such amendment in the manner provided by law." Cusachs vs. Columbian National Fire Insurance Co., Orleans No. 7448, unreported (see Louisiana and Southern Digest); Sarpey vs. Hymel, 40 La. Ann. 425, 4 So. 439; Texala O. & G. Co. vs. Caddo M. L. Co., 152 La. 549, 93 So. 788; Bank of Eudora vs. Crowe, 2 La. App. 669; Fisher vs. Johnson, 11 La. App. 314, 123 So. 433.

"The lower court did not sustain the plea of estoppel as to the property claimed in the alternative demand, although the Choate Company had alleged in its first suit that the same was covered by the mortgage, but rejected it upon the merits. Defendants have neither appealed from that ruling, nor answered the appeal, and hence we can make no change in the judgment in their favor based upon estoppel." Choate Oil Corporation vs. Glassell, 153 La. 722, 96 So. 543, 545.

"Defendant's appeal from judgment rejecting demand in reconvention, held not to raise question of prescription pleaded to plaintiff's claim, but not ruled on." Culbertson vs. Cousin, 167 La. 520, 119 So. 535; Id., 9 La. App. 198, 119 So. 548.

"Where defendant did not appeal and filed no answer in appellate court to judgment of lower court overruling exception no cause of action the exception is not before the appellate court for review and

judgment of lower court cannot be amended." Code of Practice, arts. 592, 888; Bogue-Chitto G. Co. vs. Police Jury, 11 La. App. 246, 122 So. 505; Nelson vs. Allen, 152 La. 753, 94 So. 379; Chopin vs. Freeman, 145 La. 972, 83 So. 210; Alfred Hiller. Co. vs. Hotel Grunewald Co., 147 La. 129, 84 So. 520; Nurdin vs. Bouanchaud, Sheriff, 152 La. 853, 94 So. 420; Siragusa vs. Ill. Cent. R. R. Co., 152 La. 745, 94 So. 376; Fisher vs. K. C., S. & G. R. Co., 160 La. 449, 107 So. 302.

After the case was argued in this court and submitted to the court, on the following day defendants filed a plea of estoppel, alleging that plaintiff is estopped to deny that defendants were in possession as owners, basing said plea upon the testimony of W. H. Keith and P. P. Keith given on the trial of this case.

Plaintiff filed an objection to the plea of estoppel on the ground that it came after the cause had been tried and submitted to the court and was therefore too late.

We think the exception well taken and that the plea was filed too late. O'Hara vs. City of New Orleans, 30 La. Ann. 152; State vs. City of Alexandria, 164 La. 624, 114 So. 491; Moroney vs. Canal Bank & Trust Co., Orleans No. 7120, unreported (see Louisiana and Southern Digest).

Defendant contends that Tom Pouncey and Sallie Pouncey, by their acts in remaining on the place left by their father, where they had resided before his death and at the time of his death, constituted a tacit acceptance of the succession of their deceased father and that their tacit acceptance was binding on the other heirs who have by their acts done nothing; that acceptance by one heir is necessarily acceptance for all the heirs, for the reason that a succession is indivisible and that when one heir accepts a succession uncon-ditionally an administration of the succession cannot be had for the reason there is no longer a succession.

We cannot agree with this contention. The settled rule of law in this state is that the acceptance of one heir does not bind the other heirs; and no one can be compelled to accept a succession.

When several heirs in the same degree are called to a succession, some may accept unconditionally, other under the benefit of inventory, or any of them may renounce the succession. And the faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the longest prescription period of the rights of immovables. Succession of Waters, 12 La. Ann. 97; Succession of Bulliard, 111 La. 186, 35 So. 508; Schreiber vs. Beer's Widow & Heirs, 150 La. 676, 91 So. 149, 155.

The law of one co-owner in ordinary partnership binding other co-owners is an entirely different thing from one co-heir binding another co-heir in regard to successions. The law relative to co-owners or co-partners is not applicable to co-heirs where all the heirs have not accepted the succession.

"A succession must be administered, when it owes debts notwithstanding the unconditional or simple acceptance of one of the heirs, when the creditors of the heirs, accepting with the benefit of inventory, demand an administration." Civil Code, art. 1047; Code of Practice, art. 976; Succession of Clark, 30 La. Ann. 801; Succession of Damico, 155 La. 1041, 99 So. 862.

There are two minor heirs in this case, and the law accepts the succession for them with the benefit of inventory. They cannot accept without the benefit of inventory. The remaining six heirs, all of whom are of age, are not presumed to have ac-

cepted the succession merely by their silence. Griffin vs. Burris, 109 La. 216, 33 So. 201.

In the case of Schreiber vs. Beer's Widow & Heirs, supra, the court said:

"Articles 940, 941, 942 and 1014 of the Civil Code, declaring, substantially, that an heir, being invested with seizin or the right of possession of the estate by the mere operation of law immediately at the death of the ancestor, is considered the heir so long as he has not renounced the succession, must be read in connection with article 946, declaring that, although the succession is acquired by the heir at the moment of the death of his ancestor, the heir's right, nevertheless, remains in suspense until he decides whether he will accept or renounce the succession. In other words, so long as the heir has not renounced the succession, he is considered the heir for the purpose of being cited and of standing in judgment in a suit against the succession, as such, if there is no administrator or other such representative of the succession; and the heir who has neither accepted nor renounced the succession is likewise considered the heir for the purpose of being cited in an action to compel him to declare whether he will accept or renounce the succession, under article 1055 of the Civil Code and articles 977 and 979 of the Code of Practice. But an heir is not deemed liable personally for the debts of the succession, merely because he has not formally renounced, until his liability is fixed by the prescription established in article 1030 of the Civil Code."

It is clear that the succession could only be accepted by the two minors with the benefit of inventory, and the law does that for them. It is equally as clear that the other heirs, with the exception of Tom Pouncey and Sallie Pouncey, had not accepted the succession at the time of appointing the administrator.

At the time of the death of Sharpey Pouncey, Keith & Sons, Limited, had a recorded mortgage against the 80 acres of land owned by the deceased, as well as an open account. Assuming that two of the heirs had tacitly accepted the succession unconditionally, by remaining on the place after their father's death, we still think that an administration was necessary and could have been had.

"The question as to whether a succession shall be placed under administration is to a very considerable extent submitted to the sound discretion of the trial judge, to be exercised * * * for the benefit of parties advancing claims against the succession." Succession of Theriot, 116 La. 25, 40 So. 519; Succession of Helmke, 133 La. 93, 62 So. 487; Succession of Romero, 42 La. Ann. 894, 8 So. 632; Succession of Story, 3 La. Ann. 502.

"It is not necessary that one who claims the necessity of an administration of a succession should make full proof of his claim as a creditor; a prima facie case is sufficient." Succession of Helmke, supra; Succession of Theriot, supra; Succession of Sarrazin, 34 La. Ann. 1168.

"When a succession is accepted under benefit of inventory, the estate must be administered and liquidated—even though the beneficiary heir himself should be the administrator—for the benefit of the creditors primarily; the rights of the beneficiary heir being only residuary." R. C. C. arts. 1039 to 1070; Sevier v. Gordon, 29 La. Ann. 442; Berry vs. Wagner, 151 La. 473, 91 So. 837, 843.

In Succession of Bulliard, supra, the court said:

"Hence the case presented by the record is that of a succession which owes debts, and some of the heirs are minors. As to the minor heirs, the law accepts the succession for them with benefit of inventory. Civ. Code, art. 977. The major heirs, present or represented, have the unquestioned right to accept the succession with benefit of inventory. Id. art. 1038. Such an acceptance necessarily involves an administration of a succession which owes debts. An administration is necessary when one of the major heirs demands it or there is a minor heir." Blake vs. Kearney, 30 La. Ann. 388.

In the case of Succession of Comeau, 158 La. 370, 104 So. 119, the court affirmed the appointment of a testamentary executor where there were three heirs, two of whom accepted the succession unconditionally and the third refused to accept it. The lower court was held not to have abused its discretion, although the court said it was regrettable that all three heirs did not accept unconditionally as the succession was so well off financially.

Defendant further contends that the heirs became seized immediately upon the death of their father, and that the creditors having failed to demand security or an administration within three months thereafter, the ownership of the property became absolute in the heirs, and the succession, which was opened by the death of the heirs' father, ceased to exist.

Defendants cite, in support of this contention, article 1456 of the Civil Code, which reads as follows:

"The suit of separation of patrimony must be instituted within three months from the express or tacit acceptance of the heirs; after the expiration of this term, it is not admitted."

The three months' period begins to run, not from the death of the father, as argued by counsel, but from the date of acceptance, either express or tacit, by the heirs, the prescriptive period of which is 30 years.

When an administration is had, there is no necessity for an action of separation of patrimony; the patrimony having been separated by the appointment of an administrator. Succession of Hart, 52 La. Ann. 373, 27 So. 69; Roche & Sons vs. Armbruster, Orleans No. 5062, unreported (see Louisiana and Southern Digests).

None of the heirs had accepted the succession at the time of the appointment of the administrator, unless it was Tom Pouncey and Sallie Pouncey, and we think it immaterial to the case whether they had or had not. However, the court has announced, in Mumford vs. Bowman, 26 La. Ann. 413, very rigid rules for determining whether any particular writing or conduct on the part of an heir should be construed as an acceptance of the succession, viz:

"The acceptance of a succession is express, when in an authentic or private instrument, or in some judicial proceeding, the purpose of the heir is declared in terms so clear and distinct that no doubt can exist of his intention to accept under the responsibilities that result from an acceptance pure and simple. To incur the liability arising from an acceptance pure and simple, something more than styling himself heir in some written act, authentic or judicial, must appear in the instrument, in order to bind the party absolutely to pay all the debts of the succession out of his own means.

"Both in the express and tacit acceptance it must be made clear, that it was the intention of the party assuming the quality of heir to abide the disadvantages, if any should arise, of accepting simply and purely, as well as to enjoy the benefits that might accrue from it. In the one case, the intention is to be found in a fair interpretation of the terms and expressions of written instruments; in the other, it is to be inferred from acts, the motives of which can not be ascribed to any other purpose."

These two heirs were living on the place and working it at the time their father died, and they remained on the place, working it, the same as they did during the lifetime of their father. It is not shown that they disposed of anything belonging to the succession; they did not mortgage the property, nor partition it, and, in fact, did nothing they were not doing during their father's lifetime. It is true they did not move off the place and neither did they ask for an administration. They did exactly as ninety-nine out of ev-

ery hundred negroes would have done. It had been their home, and they continued to live there. When the application for administration was filed and advertised, they filed no opposition; neither did any of the heirs. After the property was sold and the final account was filed, showing the distribution of the funds among the creditors, they filed no opposition, and neither did the other heirs, and the final account was approved and homologated by the court. After the property was sold at succession sale, they immediately leased it from Mr. Keith.

It is certainly not clear that it was the intention of Tom Pouncey or Sallie Pouncey to abide the disadvantages of accepting the succession purely and simply, and such could not be inferred from their acts.

Therefore there was no unconditional acceptance by any of the heirs, and no need or reason for a suit for separation of patrimony after such acceptance. The appointment of an administrator had the effect of separating the patrimony and dispensed with the creditors of the succession complying with the formalities prescribed by articles 1444 to 1464 and 3275 of the Revised Civil Code. Roche vs. Armbruster, supra.

The question as to whether a succession should be placed under administration, or not, is to a very considerable extent submitted to the sound discretion of the trial judge, exercised for the benefit of all parties in interest, and especially for the protection of parties advancing claims against the succession. We do not think he has abused that discretion in this case.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be affirmed.

Cost of appeal to be paid by appellant.