PONDER, Justice.
 

 The plaintiff, Pelican Well Tool & Supply Company, Inc., brought suit against the defendants, Mrs. Ethel Herndon Sebastian and Mrs. Betty S. Reilly, the surviving wife and daughter of William Sebastian, deceased, seeking to recover $21,413.97 with 6% per annum interest from April 15, 1944, until paid, together with 15% on both principal and interest as attorney’s fees.
 

 It appears that William Sebastian, in his lifetime and during the community existing between him and his wife, Mrs. Ethel Herndon Sebastian, purchased certain oil well machinery and supplies from the plaintiff. Being unable to pay for the ■machinery and supplies, William Sebastian executed from time to time promissory notes to cover this account. The present suit is brought on the last promissory note.
 

 At the time this suit was brought the succession of William Sebastian had not been opened. The plaintiff is seeking to recover from the widow and heir on the ground that they have, by various acts, accepted the community and the succession, and are therefore liable for the debt.
 

 The defendants deny that they have committed any acts which constitute an acceptance, and allege that the note sued on was given to the plaintiff by Sebastian with an agreement and understanding that payment would not be exacted on the note unless Sebastian became financially able to pay it.
 

 Upon trial the lower court gave judgment in favor of the plaintiff as prayed for. The defendants have appealed.
 

 The defendants contend that the note sued on herein was conditionally delivered, subject to an agreement between the parties that Sebastian was to pay it only if he became financially able to do so. The defendants rely on the testimony of. an officer of the plaintiff corporation, given under cross-examination, to support their contention. We have examined the testimony of this witness and find that his testimony, taken as a whole, shows an indulgence granted to the creditor from time to time, but this witness specifically denies that there was any collateral agree
 
 *113
 
 ment with the creditor to the effect that the note was to be paid only in event of the creditor's ability to pay, or that there had been a conditional delivery of the note.
 

 The plaintiff’s position that the defendants have committed various acts constituting acceptance of the community and succession is not sufficiently established by the testimony in this case. The plaintiff sought to prove the acceptance by statements of the defendants, made under cross-examination, without producing any independent testimony. While the testimony of the defendants appears to be contradictory in some instances, yet, when taken as a whole, it indicates that there was no intention on the part of either to accept the community or the succession.
 

 The plaintiff contends that Mrs. Reilly, the daughter of the deceased, accepted the succession by joining in an oil, gas, and mineral lease executed by her paternal grandfather, D. H. Sebastian, on lands in DeSoto Parish. The evidence shows that the property was owned by D. H. Sebastian, and that Mrs. Reilly signed the instrument at the request of an aunt and her grandfather. She testified that she knew she had no interest in the property. The property was not owned by the community or the succession, and the fact that Mrs. Reilly signed this instrument could not be considered an acceptance of a succession that had no interest in the property.
 

 The next contention is that Mrs. Sebastian accepted the community by using certain funds on deposit at the time of Sebastian’s death in the First National Bank of Mansfield. The account was in the name of Mrs. Sebastian and, according to her testimony, the funds formed no part of the community. She testified that a portion of these funds consisted of allotments which she received from the pay of her son who was in the service; another portion consisted of money collected for a corporation which she represented; and that the account also contained the proceeds of insurance checks for her brother. There is no evidence in the record to refute her testimony. She testified that she paid $169.50 out of this account on the funeral expense of the deceased;. $150.00 to her brother, to whom she owed $200.00 from his insurance checks; and also several checks to the corporation which she was representing. The continuance of this account under the circumstances, without showing any intention of accepting the community, could not be considered as an acceptance. In fact, there is nothing in the record to show that these funds were the property of the community other than the fact that Mrs. Sebastian might have earned a small portion of it as a commission on certain sales, she had made for the corporation. Considering the small portion of the fund that might have represented her earnings, it would not have been sufficient to cover the
 
 *114
 
 check paid out of the account for the funeral expenses. The payment- of funeral expenses, an act of piety or humanity, is not sufficient to constitute an acceptance. Article 1001, Revised Civil Code.
 

 The plaintiff urges that the defendants received certain funds belonging to the succession which they have disposed of. These funds constitute the price received for a Dodge automobile plus an amount received from a Mr. Chamberlain for mineral rights standing in his name. There is an instrument in the record purporting to be a dation en paiement whereby the deceased, during his lifetime, gave his wife, Mrs. Sebastian, the automobile. Mrs. Sebastian testified that the automobile was given her in payment of funds and property which she had acquired from her mother by inheritance. There is nothing in the record to disprove her testimony, and no effort has been made to set aside the dation en paiement. The testimony of the defendants with reference to the amount of money received from Mr. Chamberlain is to the effect that it was the property of Major Reilly, the husband of Mrs. Reilly, a member of the Air Force. The plaintiff lays stress on the fac.t that Mr. Hunter, Mr. Chamberlain, and Major Reilly did not testify in the case. It is incumbent, upon the plaintiff to show that these funds were the property of the community or succession. The defendants are not under the burden of proving the plaintiff’s case. While the plaintiff does not appear to be satisfied with the testimony of the defendants as to the ownership of these funds, this does- not relieve the plaintiff of proving its contention. As the matter now stands, there is nothing upon which we could decree these funds to be the property of the community or succession.
 

 The plaintiff points out that the defendants caused the completion and recordation of an assignment from T. H. McKinnie to Betty S. Reilly belonging to the estate of the deceased. The mineral interest was acquired by the deceased in the name of McKinnie and a blank assignment was given, which showed up after the death of deceased with Mrs. Reilly as assignee. Mrs. Reilly testified that her father acquired the mineral rights for her husband with Major Reilly’s funds. The testimony of McKinnie and of the attorney for the defendants corroborate the defendants in that the two witnesses stated in effect that they were informed by the deceased that Mrs. Reilly had given him the money to buy mineral interests and that these mineral rights would make the Reillys some money. The plaintiff offered no independent proof to the contrary. Under such circumstances- we could not say that these mineral rights were not the property of Major Reilly.
 

 The plaintiff next contends that the defendants accepted the succession when they caused to be recorded a mineral deed from R. D. Campbell to Mrs. Reilly, which
 
 *115
 
 interest belonged to the succession. The testimony in regard to this transaction is similar to the McKinnie assignment. Mrs. Reilly testified that her father had acquired the mineral interest for her husband, Major Reilly, with funds furnished by her husband. This is not refuted.
 

 The plaintiff argues that the defendants accepted the community and the succession by the transfer to Mrs. Reilly by Mrs. Sebastian of mineral interests belonging to the succession. Mrs. Sebastian’s explanation of this transaction is to the effect that she was in ill health at the time the transfer was made and was to undergo a major operation, and that she transferred this property to her daughter as a conservatory act. This property was subsequently listed in the inventory of the succession. There is nothing in the evidence to show that either of the defendants ever intended to appropriate this property other than the transfer. In the absence of any independent proof to the contrary, we have no ground to disbelieve Mrs. Sebastian’s explanation of the transaction.
 

 The plaintiff contends that the defendants caused a certain lease, known as the Colbert lease, to be put in the name of Mrs. Reilly, which lease was afterwards sold by them and the proceeds derived therefrom removed from the jurisdiction of the court. The sale of this lease was handled several months after the death of the deceased. The testimony of Mrs. Reilly is to the effect that this lease was acquired with funds belonging to Major Reilly. There is some conflict in her testimony concerning the method she used in transmitting to her husband the funds received from the sale of this lease — whether or not the money was mailed direct to him or deposited in a bank in Mansfield and subsequently sent to the account of Major Reilly in a San Antonio bank. There is no other proof concerning this transaction, or any fact established upon which we could base a conclusion that this was not the property of Major Reilly.
 

 It is contended by the plaintiff that the defendants caused A. F. Crider to deed to Mrs. Reilly certain overriding royalty interest in the minerals on certain lands in DeSoto Parish belonging to the succession. The testimony of the defendants is to .the effect that this property was acquired with Major Reilly’s funds. Their testimony is corroborated by the testimony of their attorney, to the effect that he carried out Dr. Crider’s wishes in transferring the property to Mrs. Reilly. There is no independent proof to the contrary.
 

 Mrs. Sebastian caused D. R. Taylor to transfer certain minerals situated in Texas and owned by the deceased to Mrs. Reilly, and plaintiff contends that these acts constituted an acceptance. According to Mrs. Sebastian’s testimony, this property was transferred to Mrs. Reilly as a conservatory act on account of her illness, referred to above, and the record
 
 *116
 
 shows that this mineral interest was subsequently transferred to the administratrix of the succession. There is no independent proof to show that either of the parties had any intention of accepting the succession or appropriating the property.
 

 The plaintiff contends that Mrs. Sebastian has continued to use a DeSoto car owned by the community which constitutes an acceptance of the community. Mrs. Sebastian claims this car as her separate property. She testified that it was paid for by her earnings in addition to $250.00 received for an old car given her by her son. She is undoubtedly mistaken on the law as to what constitutes community property, but there is an absence of will to accept the community. She is holding the car under the mistaken belief that it is her separate property, and under the provisions of Article 991 of the Revised Civil Code this does not constitute an acceptance.
 

 Mrs. Sebastian has continued to reside in the community home and has used furniture admittedly belonging to the community for a period of almost nine months before the succession was opened. The plaintiff takes the position that this constitutes an acceptance of the community. - Continuing to live in a home owned by the community does not constitute an acceptance. Keith v. Lee, 13 La.App. 309, 127 So. 139. Moreover, there is a deed in the record from Mrs. Jennie Farmer to Mrs. Sebastian showing the home to be purchased with the separate, paraphernal funds of Mrs. Sebastian. There was no. cash consideration and the purchase price was entirely on credit, secured by mortgage on the property. According to Mrs. Sebastian’s testimony, no part of the purchase price has ever been paid. She testified that she intended to pay for the home out of her earnings whenever she became able to do so. Some of the furniture has-been inventoried in the succession, and the remainder of it is claimed by Mrs. Reilly and Mrs. Sebastian as their separate property. They claim that they acquired it by gift and inheritance. Be that as it may, the use of community furniture, intermingled with separate furniture of the surviving spouse and heir, would not constitute an acceptance. Keith v. Lee, supra. Furthermore, according to the testimony of the defendants and their attorney, the reason the succession was not opened until almost nine months after the death of Mr. Sebastian was because they had difficulty in ascertaining just what property or interests were owned by the deceased.
 

 The deceased was heavily involved; in fact, he had for several years been indebted to the extent of some $75,000.00. The testimony shows that the deceased was what is- termed a mineral broker, operating with funds of others. It also shows that all of the mineral rights and leases were acquired in the name of others, because he was in no position to hold property in his own name without being
 
 *117
 
 levied upon. There is some conflict in the testimony of the defendants that discredits their testimony to some extent; but the plaintiff has failed to produce any independent proof to support its contentions, and relies entirely upon whatever it has eked out of the defendants’ testimony under cross-examination. We do not find that the defendants have made any admissions that could be considered proof of an acceptance of the community or succession. The disbelief of their testimony would afford the plaintiff no relief and could not be considered to be affirmative proof where none exists upon which we could base a judgment. Ellis v. Kolb, La.App., 196 So. 89; New Orleans & N. E. R. Co. v. Redmann, La.App., 28 So.2d 303. The plaintiff has urged that the circumstances surrounding these transactions are of a suspicious character, but we would not be warranted in awarding it judgment in the absence of any convincing proof. The burden is upon the plaintiff to prove its case, which it has not borne. From the evidence it appears that Major Reilly and his wife have assisted the deceased and Mrs. Sebastian from time to time. The plaintiff has not shown that the deceased acquired any of this property with any other independent funds. The plaintiff has not alleged fraud, or contended that any of the transactions were simulated or fraudulent. It argues, however, that certain funds derived from these various transactions were transferred to. an account in a Texas bank; but this fact alone would not establish the ownership of these funds. The plaintiff, being a creditor, could have opened the succession of the deceased, but instead it is seeking to recover from the widow and heir of the deceased on the ground that they have accepted the community and succession. Consequently, it is incumbent upon the plaintiff to prove that the defendants have accepted the community and the succession by some affirmative proof. The plaintiff, in its brief throughout, appears to take the position that it was incumbent upon the defendants to produce various witnesses who were parties to the various transactions, but the fact cannot be overlooked that the burden of proof is on the plaintiff and not on the defendants. We see no reason why the plaintiffs could not have availed themselves of the testimony of these various witnesses.
 

 Under the provisions of Article 990 of the Revised Civil Code, there must be an intentional acceptance united with the fact in order for the acceptance to be inferred. Under the provisions of Article 991, the disposition of property by a person who does not know that it belongs to the succession would not be such an act as includes the will to accept. Under the provisions of Article 997, acts that are merely conservatory do not amount to an acceptance of a succession. Under Article 1001, the paynient of funeral expenses is not considered to be an acceptance.
 

 
 *118
 
 In both express and tacit acceptance, it must be made clear that it was the intention of the party assuming the quality of heir to abide the disadvantages of accepting purely and simply, as well as to enjoy the benefits arising therefrom. As stated in the case of Mumford v. Bowman, 26 La.Ann. 413, 415, the acceptance “is to be inferred from acts, the motives of which can not properly be ascribed to any other purpose.” See, also, Schreiber v. Beer’s Widow & Heirs, 150 La. 676, 91 So. 149.
 

 In view of the fact that the succession was so heavily involved and its assets so meagre, it is not reasonable to suppose that the widow and heir intended to accept. The fact that they believed they owned the disputed property could not be construed as an intention to accept, and they could not be precluded from asserting their rights of ownership to property that they honestly believed to be their own. The evidence shows that the deceased was hopelessly insolvent and was operating for others with their funds. Major Reilly undoubtedly had sufficient funds to purchase the disputed mineral interests. In the absence of any showing whatsoever that these interests were purchased with the funds of others, since it is evident the deceased did not have funds to purchase them, we would not be warranted in disbelieving the testimony of the defendants.
 

 During the course of the trial Mrs. Reilly was requested to produce in court certain shares of stock in the-Travis Peak Royalty Corporation which she claimed were given to her by her-father when she finished high school with the intention, if the stock became valuable, that she might attend college. The plaintiff attached the stock after it was produced in court and sued out an injunction restraining Mrs. Reilly from disposing of it. Since we have determined that Mrs. Reilly has not accepted the succession and is therefore not liable for its debts, the attachment and injunction must fall.
 

 For the reasons assigned, the judgment of the lower court is reversed and set aside. The plaintiff’s suit is dismissed at its cost.