50 So.2d 197

BARNSDALL OIL CO. et al. v. APPLE-GATE et al.

No. 39589.

Nov. 6, 1950.

Rehearing Denied Jan. 9, 1951.

Robert P. Hunter, Curator ad Hoc and Hunter & Hunter, all of Shreveport, for appellants.

W. M. Phillips, W. S. Waller, Shreveport, for appellees.

HAWTHORNE, Justice.

Barnsdall Oil Company et al. instituted an interpleader or concursus proceeding under the provisions of Act 123 of 1922, as amended by Act 242 of 1944, R.S. 13:4811, against the descendants of W. W. Belcher, and deposited in the registry of the court a sum of money in excess of $2000.00, representing 5/9 of the royalty under oil and gas leases covering the SE¼ of the NW¼, Section 17, Township 20 North, Range 12 West.

W. W. Belcher was married twice, the first time to Mary Martin, who predeceased him, and the second time to Mary Alice Stockwell. Of the first marriage six children were born, one of whom predeceased his father without issue. Of the second marriage four children survived their father, and those who predeceased him died in infancy. The claimants herein are (1) a child of the first marriage and the descendants of the other children of

this marriage, and (2) two children of the second marriage, who had acquired by deed and inheritance the interest of the other two children of that marriage. For the sake of brevity, we shall hereafter designate these claimants as "children of the first marriage" and "children of the second marriage". It is conceded by all parties that the children of the second marriage are the owners of a 4/9 interest in the property.

The property in controversy was acquired by W. W. Belcher on January 4, 1899, during his second marriage, but was his separate property since, prior to its acquisition, the community of acquets and gains which existed between him and his second wife had been dissolved by judicial decree. W. W. Belcher died in 1901, and his second wife, Mrs. Mary Alice Stockwell, died in 1914. The children of the second marriage opened the succession of their mother and were sent into possession of her property by judgment rendered December 18, 1914, but the succession of W. W. Belcher was never opened.

The children of the second marriage contend that they have accepted the succession of their father, W. W. Belcher, and that, because the children of the first marriage did not accept this succession within the statutory period, they are now barred by the prescription of 30 years under the provisions of Article 1030 of the Civil Code.

The children of the first marriage do not contend that they ever accepted their father's succession, but strenuously urge that the children of the second marriage did not accept their father's succession within 30 years after his death, and argue that under these circumstances all of his heirs, that is, the children of both marriages, should participate in his succession.

Under these contentions the only issue presented in this case is whether the children of the second marriage accepted their father's succession.

The lower court maintained the plea of prescription of 30 years urged by the children of the second marriage and recognized these children to be the owners of the 5/9 interest in controversy, subject to all valid existing oil, gas, and mineral leases. From this judgment the children of the first marriage have appealed.

This court held in Tillery v. Fuller, 190 La. 586, 182 So. 683, 695, that the heir who accepts the succession within the statutory period bars his coheirs who have not accepted from participating in the succession. In that case we stated: " * * * What the court held in the cases referred to—particularly in Bendernagel v. Foret—was that an heir at law, or a regular heir, and particularly a forced heir, would not lose his right to accept the succession, by failing to accept it within thirty years, as against a trespasser, or a stranger in possession without a title and without the benefit of the prescription acquirendi causa. Hence we held that it was only as to a coheir who had accepted

the succession, or an heir next in degree, who had accepted the succession, that the one who failed to accept within the thirty years would lose his right to accept the succession, by effect of the prescription provided for in article 1030 of the Civil Code. * * *" See also Bendernagel v. Foret, 145 La. 115, 81 So. 869, and Article 1030 of our Civil Code.

Appellants, children of the first marriage, do not contest or question the correctness of this principle of law, but they urge that these cases have no application in the instant case for the reason that there was no real acceptance by the children of the second marriage of their father's succession.

The appellees do not contend that they ever formally accepted the succession of W. W. Belcher, but they rely on certain acts within the 30-year period as being a tacit acceptance of the succession.

After the death of W. W. Belcher in 1901, the property in controversy was farmed by tenants for several years and rents were collected under the supervision of his widow and one of the children of the second marriage who was of age. In 1917 one of the children of the second marriage conveyed an undivided one-fourth interest in the property to the other three. This deed erroneously described the property, but subsequently the error was discovered, and in 1944 a correction deed was executed. This property was assessed to the other three children during a part of the 30-year period, and all taxes due on the property have been paid by the children of the second marriage.

The assessment of this property for the years 1901 through 1923 appeared on the assessment rolls for some years in the name of Mrs. W. W. Belcher, for others in the name of Estate of W. W. Belcher, for others in the name of Mrs. M. A. Belcher, and for others in the name of Estate of Mrs. M. A. Belcher. In these various assessments the property was erroneously described except for the assessments for the years 1917 to 1918 and 1922 to 1923, wherein the property, assessed to Estate of Mrs. M. A. Belcher, was correctly described. From 1924 to 1939 it was assessed under correct description in the names of the three children of the second marriage who had acquired the interest of their brother, as hereinabove set forth. Since the death of one of these three children in 1940, the property has been assessed in the names of the remaining two, in the proportion of one-half to each.

Within 30 years from the death of W. W. Belcher, children of the second marriage on two occasions mortgaged the whole property in question, together with other property, the first time on June 2, 1921, to secure a note in the sum of $800.00, and the second time on February 13, 1930, to secure a note in the sum of $1000.00.

Under Article 988 of the Civil Code, the simple acceptance of a succession may

be either express or tacit. Under this article the acceptance is tacit when some act is done by the heir which necessarily supposes his intention to accept, and which he has no right to do but in his quality of heir. Article 992 provides that there are some acts which, though in reality foreign to the succession, nevertheless evidently manifest the will to accept; as, for example, if the person who is called to the succession possesses himself or disposes of effects found in the succession, thinking that they belong to it, he does an act which makes him liable as heir, because his belief that the effects appertained to the succession is sufficient to establish his will to accept.

The question now to be answered is whether the acts enumerated above, or any one of them, constituted an acceptance of the succession of W. W. Belcher under the provisions of these articles.

■ The testimony with reference to the farming operations is somewhat vague and uncertain, and it is not clear whether the child who had the supervision of the property was acting as owner for himself and the other children, or was merely assisting his mother in the management of the property, and it is doubtful that the evidence relating to this act is sufficient to show an intention to accept. The same is true of the assessment of the property and the payment of taxes, as these acts might be considered conservatory in nature and done to preserve the status of the prop-

erty. The capacity of heir must be assumed in an unqualified manner or in such a manner as to manifest clearly the intention of the person called to the succession to act in such capacity, and it is always necessary to distinguish acts of ownership from those of mere administration or preservation. See Kelley v. Kelley, 198 La. 338, 3 So.2d 641.

■ It is not necessary for us to consider the sale made in 1917 by one of the children of the second marriage to the other three of an undivided one-fourth interest in order to determine whether such sale was made by him under the belief that the property belonged to the succession of his father, and thereby constituted an acceptance on his part of that succession under Article 992. The remaining three children, his vendees, on June 2, 1921, mortgaged the whole of the property to secure a note in the sum of $800.00, and in our opinion the act of mortgaging the property constituted on the part of the mortgagors an unequivocal and unconditional acceptance of the succession of their father, W. W. Belcher. This was an act done by these heirs which necessarily supposed their intention to accept and which they would have had no right to do but in their quality as heirs. See C.C., Art. 988, and Scott v. Briscoe, 36 La.Ann. 278. It is immaterial in this case whether the act of sale made by one of the children of the second marriage to the other three constituted on the part of the vendor an accept-

ance of his father's succession, because the three other children of the second marriage, by executing the act of mortgage within the 30-year period as hereinabove set forth, did accept the succession of their father, and that acceptance is sufficient to bar the children of the first marriage from participating in the succession.

Appellants strenuously urge that the numerous acts which appellees contend constituted a tacit acceptance of the succession of their father on the part of the children of the second marriage were not sufficient in themselves to constitute an acceptance, for the reason that these children did not know that the property belonged to the separate estate of their father, but were of the belief that it was the property of their mother, and in support of this contention appellants rely on the provisions of Articles 990 and 991 of our Civil Code. These articles read as follows:

"Art. 990. It is necessary that the intention should be united to the fact, or rather manifested by the fact, in order that the acceptance be inferred."

"Art. 991. The person who is called to the succession, if he dispose of a thing which he does not know to belong to the succession, does not thereby do an act that will make him liable as heir, because such an act does not include the will to accept."

There would be merit to this contention under the provisions of the above quoted articles if the record disclosed that the children of the second marriage mortgaged the property in the belief that it belonged to their mother and had been acquired by them by inheritance from her. Two of the children of the second marriage testified without contradiction that they had honestly believed that the property in controversy belonged to the community which existed between W. W. Belcher and their mother, his second wife. Thus, when they executed the mortgage, they believed that they were mortgaging not only the interest they acquired from their mother but also the interest they acquired from their father, and that they were mortgaging the property which they acquired from the successions of their mother and their father. This contention, therefore, is without merit.

Appellants contend that the case of Pelican Well Tool & Supply Co., Inc., v. Sebastian, 212 La. 217, 31 So.2d 745, is controlling here on the question of acceptance, and that under that case the acts of appellees here could not be considered as an acceptance of the succession. That was an action by a creditor of the community against the wife and daughter of the deceased. The creditor contended that they had committed various acts in regard to the community which constituted acceptance of his succession. This court found that certain of the acts were done in regard to property that was not in fact community but belonged to other persons, that others were merely conservatory acts, and that

others were done under the mistaken belief that the property was separate property of the wife, not community. Under the facts as found by the court in that case the decision is correct that the defendants therein did not accept the succession. No comparable facts exist in this case. In that case the heirs satisfactorily explained why the acts which appeared to be an acceptance were not in fact an acceptance.

The case of Dileo v. Dileo, 217 La. 103, 46 So.2d 53, also cited by appellants, has no application to the facts in the instant case. In that case there was no contention that certain heirs accepted within 30 years, to the prejudice of other heirs who had not.

█ For the reasons assigned, the judgment appealed from is affirmed; all costs to be paid from the funds deposited in the registry of the court, pursuant to the provisions of Section 6 of Act 123 of 1922, as amended by Act 242 of 1944, R.S. 13:4816.

McCALEB, Justice (dissenting).

The holding of the majority that the children of the second marriage unconditionally accepted the succession of their father, W. W. Belcher, is premised wholly upon the mortgage executed by three of the four children on June 2nd 1921. This is said to be an act which "necessarily supposed their intention to accept and which they would have had no right to do but in their quality as heirs."

It is my opinion that appellants are correct in their contention that the documentary evidence and other circumstances evince that the children of the second marriage did not know that the property belonged to their father but considered it as the property of their mother and that, therefore, their act mortgaging it is not to be held as an acceptance under the law. Articles 990 and 991 of the Civil Code.

The majority concede that this argument would be meritorious but for the testimony of two of the children of the second marriage to the effect that they honestly believed that the property belonged to the community existing between W. W. Belcher and their mother, his second wife.

For my part, I cannot give to these self-serving declarations of the two children of the second marriage the credence accorded by the majority. It is stated in the main opinion that this testimony is not contradicted. But how could it be, when it is merely an expression of the witnesses' belief or opinion! Certainly, aside from these self-serving statements, there is nothing in the documentary evidence or other facts of the case to sustain a holding that, until it was discovered that appellants had a legal interest, the children of the second marriage believed that they were, by their dominion over the property, accepting the succession of their father.

The case of Scott v. Briscoe, 36 La.Ann. 278, cited in support of the majority ruling, is hardly appropriate to the facts of this

case. There, an heir, who was also the administrator of the succession, joined with his co-heirs in mortgaging the property of their ancestor and, later, in his capacity as administrator, opposed the title of the mortgage creditors derived from a sale, under foreclosure of the mortgage against the heirs. The court correctly held that his joinder in the mortgage of the property constituted an acceptance terminating his adminstration and he was, by his conduct, estopped "from setting up such contradictory pretensions".

It is to be borne in mind that appellants are heirs at law of equal standing with appellees and it is only because of the decision in Tillery v. Fuller, 190 La. 586, 182 So. 683,[1] which counsel for appellants do not assail, that a resolution that appellants have lost title under Article 1030 of the Civil Code (by failing to accept their father's succession within 30 years while appellees had accepted) can be sustained. Under these conditions, it seems to me that proof of acceptance by appellees should be either express or, if tacit, the circumstantial evidence must be of such a nature as to exclude any other reasonable hypothesis than that it was appellees' intention to render themselves liable for the debts as well as their willingness to receive the benefits. The probative proof administered here does not convince me that appellees ever thought or

considered, until this lawsuit was in the offing, that the property in contest belonged to their father, who died in 1901 and whose succession was never opened.

I respectfully dissent.

50 So.2d 202

## WILSON v. WILSON.
### No. 40105.

Dec. 11, 1950.

---

1. The holding in Tillery v. Fuller is based on dicta contained in Bendernagel v. Foret, 145 La. 115, 81 So. 869. The landmark case on the subject (application of Article 1030, C.C.) is Generes v. Bowie Lbr. Co., 143 La. 811, 79 So. 413.