372 So.2d 788 (1979)
LOUISIANA BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
Unopened Succession of Frank J. PERNICI and Peggy W. Pernici, d/b/a Rocky's, Defendants-Appellants.
No. 13875.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1979.
*790 Bodenheimer, Jones, Klotz & Simmons by James P. Bodenheimer, Shreveport, for defendant-appellant, Peggy W. Pernici, d/b/a Rocky's.
Tucker, Martin, Holder, Jeter & Jackson by T. Haller Jackson, III, Shreveport, for plaintiff-appellee.
R. J. Miciotto, Bossier City, Curator ad Hoc for defendant-appellee, Unopened Succession of Frank J. Pernici.
Before BOLIN, PRICE and MARVIN, JJ.
MARVIN, Judge.
This appeal is from a summary judgment in favor of the bank against a widow, Mrs. Pernici, for the amount of overdrafts paid by the bank on a business checking account which was contractually established by Mr. and Mrs. Pernici about three months before his untimely death. The judgment also awarded attorney fees under LRS 9:2781. We reverse and remand.
The account was opened for a restaurant known as "Rocky's" on June 2, 1978. Mr. Pernici died on August 29. The overdrafts ($2,471) resulted from about a dozen checks signed by Mr. Pernici between July 27 and August 25. Mrs. Pernici signed three checks totaling $460 on the account before July 8, when it was not overdrawn.
This suit was filed October 20, 1978. Mrs. Pernici formally renounced her interest in the community estate on October 30. She moved for a summary judgment on the basis of that renunciation. The bank also moved for a summary judgment, and contends here that her renunciation is ineffective because she took an active concern in the affairs of the community by writing the checks on the account (CC 2412), because she allowed two judgments to be taken against her as surviving spouse (CC 2417), and because she failed to timely file an inventory of the community estate (CC 2413).[1]
The account agreement and signature card signed by Mr. and Mrs. Pernici are contained in the record. Neither contains any promise by Mrs. Pernici to pay a sum certain in money to the bank. LRS 10:3-104(1)(b). Mr. and Mrs. Pernici were at best customers of the bank under LRS *791 10:4-104(1)(3) against whose account the bank was authorized to charge for overdrafts.[2]
Unless a wife expressly obligates herself for the payment of community debts, she is not responsible for the obligations of the community. CC 2409; Consolidated Loans, Inc. v. Guercio, 200 So.2d 717 (La.App.1st Cir. 1966). Proof must be clear and convincing that she intended to bind herself personally. Isana Products, Inc. v. Lewing, 168 So.2d 903 (La.App.2d Cir. 1964). The code speaks of the wife's privilege of being able to exonerate herself from the debts contracted during the marriage. CC 2410.
The wife has three alternatives upon the dissolution of the community. She may renounce her share, in which case the husband or his accepting heirs retain all assets and become liable for all community debts. She may accept her share, in which case she may demand an immediate partition and become personally obligated for one-half of the community debts. She may accept her share of the community with benefit of inventory, in which case her share of liability for community debts is limited to what can be paid out of her one-half share of community assets. See Note, Creditor's Rights and the Community of Gains, 34 La.L.Rev. 874, 880 (1974).
The renunciation, of course, becomes available only when the community is dissolved. Acceptance may be tacit, but only acts following dissolution of the community can amount to a tacit acceptance. See 3 Planiol, Traite elementaire de droit civil, § 1223, § 1994 et seq. (La.State L. Inst, trans. 1959). Our interpretation of the term active concern in CC 2412 is that it refers to the wife's activities in dealing with the effects of the community after dissolution. CC 2412 expressly provides that acts which are conservatory or administrative do not come within the denomination active concern. Compare the code articles regarding the renunciation of the wife with that of a beneficiary heir. See, e. g., CC 2413, 2414 and 997.
We hold then, that the wife's signing of three checks on a business bank account before her husband's death does not bar her from renouncing the community after his death. Circumstances where liability has been imposed on the surviving wife for acts after dissolution, have been much greater. See Martin Davie & Co. v. Carville, 110 La. 862, 34 So. 807 (1903); Armato v. Ross, 177 So. 491 (Orl.La.App. 1937).
CCP 967 states in part:
"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein ..." (Emphasis supplied)
The bank's affidavit, signed by its cashier, in support of the summary judgment, is not sufficient to resolve the material issue of Mrs. Pernici's active concern in the effects of the community after Mr. Pernici's death. CCP 966. It merely attests to the correctness of the overdrafted account and that Mrs. Pernici took active concern in the management of the community by signing the three checks to pay debts of the business.
The two suits in which judgments were allegedly taken against Mrs. Pernici are not contained in the record, although they are referred to in the brief of each opposing counsel by name and docket number in the 1st Judicial District Court. We deduce the suits are proceedings by executory process. The bank argues there is no distinction between judgments taken by ordinary process and executory process.
Executory process in Louisiana is an action which seeks an order for the seizure and sale of property, the proceeds from which may be credited against any indebtedness owed by defendant which is secured by the property. It is an action in *792 rem and no personal judgment is rendered against the debtor in executory process. See Hood Motor Company, Inc. v. Lawrence, 320 So.2d 111 (La.1975); Buckner v. Carmack, 272 So.2d 326 (La.1973); McMahon, The History of the Development of Executory Procedure in Louisiana, 32 Tul.L. Rev. 555, 570 (1958). We hold, then that an order for the seizure and sale of property under executory process is not a judgment within the contemplation of CC Art. 2417 which will cause a widow to lose the power of renouncing the community estate. See also Schreiber v. Beer's Widow and Heirs, 150 La. 676, 91 So. 149 (1922), discussed infra.
Notwithstanding CC Art. 2413 and LRS 9:2821 (Act 4 of 1882), Schreiber squarely held that a widow does not have to file an inventory to preserve her right to renounce the community. See also Pelican Well Tool & Supply Co. v. Sebastian, 212 La. 217, 31 So.2d 745 (1947); Castleberry v. Ethridge, 81 So.2d 451 (La.App.2d Cir. 1955).
Schreiber also indirectly illuminates the prior issue of whether an order for executory process is a judgment within the contemplation of CC Art. 2417. CC 2414 states that after expiration of the delays for renouncing, the surviving wife "... may be ... forced to make her decision [in the same manner as a beneficiary heir], and judgment may be rendered against her as a partner, unless she renounces." Applying the code articles applicable to acceptance or renunciation by a beneficiary heir, Schreiber, in sustaining an exception of no cause of action against an heir who has neither accepted nor renounced the succession, said the heir may be cited "... to compel him to declare whether he will accept or renounce ... [b]ut an heir is not deemed liable personally for the debts of a succession merely because he has not formally renounced ..." 91 So. at p. 155.
Thus in a suit against a widow, who has neither accepted nor renounced the community of her late husband, it would appear that she, like the heir of the husband, must be compelled to declare her acceptance or renunciation before judgment against her, as surviving spouse, can be obtained. If the order for executory process is considered as a judgment under 2417, as the bank contends, the surviving wife may be cast in judgment before any service of process and without having any opportunity to renounce. This is so because the order for executory process is signed before notice is given the debtor where the CCP 2639 demand for payment has been waived.
In summary, we hold that a summary judgment should not have been granted. Since a remand is also ordered, Mrs. Pernici's other assignment of error requires comment. She contends that the trial court summary judgment, in any event should not have been for the total amount of the overdrafts. If Mrs. Pernici is liable at all, she is liable only for one-half. The bank does not contend that she should be liable for the whole. Mrs. Pernici's liability, if any, is to be determined by the account agreement and signature card and the applicable banking and community property laws. See National Bank of Bossier City v. Fornea, 272 So.2d 411 (La.App.2d Cir. 1973); Caddo Trust & Savings Bank v. Bush, 182 So. 397 (La.App.2d Cir. 1938).
Judgment below is reversed at appellee's cost and the case is remanded for further proceedings in accordance with law.
NOTES
[1] CC 2412: "The wife who has taken an active concern in the effects of the community, can not renounce the same. Acts which are simply administrative or conservatory, do not come, in this article, under the denomination of active concern."

CC 2417: "The widow, above the age of majority, who has allowed a judgment to pass against her as a partner, by a court of general jurisdiction, shall lose the power of renouncing."
CC 2413: "The surviving wife, who wishes to preserve the power of renouncing the community of gains, must make an inventory within the delays and with the formalities prescribed for the beneficiary heir." See also LRS 9:2821, CC Arts. 1034, 1035.
[2] LRS 10:4-401(1) reads:

"As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft."