STOKER, Judge.
This case presents for review the question: May a wife, judicially separated from her husband in 1979, exercise the right to renounce the community of acquets and gains (and thereby escape the liabilities of the community) subsequent to the repeal of Article 2410 of the Louisiana Civil Code? This provision of law, repealed effective January 1, 1980, provided:
“Both the wife and her heirs or assigns have the privilege of being able to exonerate themselves from the debts contracted during the marriage, by renouncing the partnership or community of gains.”
Plaintiff, Phyllis Wattigny, filed her renunciation October 17, 1980, i. e., subsequent to the repeal of the statute granting the right to renounce. The trial court rendered judgment in favor of Phyllis Wattig-ny holding that the renunciation was valid. The trial court reasoned that inasmuch as plaintiff and defendant were married and were legally separated while LSA-C.C. art. 2410 was still in effect, the wife’s right to renounce was vested. The defendant-husband appealed.
Community property provisions of the Louisiana Civil Code were extensively revised through Act 627 of the 1978 session of the Louisiana Legislature and by Act 709 of 1979. The revision did away with the head and master concept under which the husband alone could manage most aspects of community property. In its place new articles substituted the concept of equal management by the spouses. As a corollary to the husband’s right of exclusive management under the former scheme, the wife and her heirs could exonerate themselves from community debts contracted by the husband through the means of renouncing the community (formerly LSA-C.C. art. 2410). Under the equal management scheme, this is no longer true.
Pertinent dates in this controversy are as follows:
February 22, 1974 Marriage of the parties.
April 2, 1979 Suit for separation from bed and board filed by Phyllis Wattigny.
November 30, 1979 Judgment of separation rendered.
December 14, 1979 Judgment of separation signed and recorded. (Community dissolved retroactively to April 2, 1979.)
June 30, 1980 Suit for divorce filed by Phyllis Wattigny.
October 17, 1980 Renunciation of community filed by Phyllis Wattigny.
*778 October 27, 1980 Divorce action tried. Judgment of divorce rendered in favor of Phyllis Wattigny. Question of validity of renunciation of community taken under advisement.
November 17, 1980 Judgment of divorce signed.
November 20, 1980 Reasons for Judgment (dated November 17, 1980) handed down holding valid renunciation by Phyllis Wattigny.
December 29, 1980 Judgment relative to renunciation signed (recorded December 30, 1980).[1]
The right of renunciation under former LSA-C.C. art. 2410 became available upon dissolution of the community and not before. Louisiana Bank & Trust Co. v. Pernici, 372 So.2d 788 (La.App. 2nd Cir. 1979). In this case the earliest that Mrs. Wattigny could have renounced the community was on December 14,1979, (date of the judgment of separation) despite the fact that the judgment was retroactive to April 2, 1979 (the date of filing suit). Hence, if the repeal of LSA-C.C. art. 2410, effective January 1, 1980, should be deemed to cut off Mrs. Wattigny’s right to renounce, she was faced with the practical difficulty of determining within seventeen days whether it was to her advantage to accept the community or renounce.[2]
The subject of retroactive application of the legislation in question has received deep and scholarly consideration.[3]
The Legislature’s intention as to whether the new legislation should be given retroactive effect is not clear. Section 9 of Act 627 provided for retroactivity. Before Act 627 of 1978 could take effect as provided on January 1, 1980, the entire Act was repealed by Act 709 of 1979.[4] The latter Act, which became the law, contained no provision for retroactivity. Professors Spaht and Samuel suggest that the failure to include a retroactivity provision in Act 709 of 1979 does not represent a change in legislative intent.[5]
On the other hand, it may be argued that the omission was deliberate.
*779 On the basis of the specific facts before us we do not believe that we need to make a definitive determination on the retroactivity issue. Nor do we feel that we must consider questions of constitutionality, such as impairment of contract rights or denial of due process. Constitutional issues may well arise given a difficult set of facts. Here we start with the fact that the wife’s right to renounce came into being prior to the effective date (January 1, 1980) of the repeal of the codal article authorizing renunciation. Nothing in Act 709 of 1979 leads us to believe that it was the intent of the Legislature to destroy such a right which had come into being prior to the effective date of the Act. Thus we avoid the general overall question of retroactivity of the Act on the simple ground that, in this situation at least, there is no clear indication of an intent to foreclose a wife’s renunciation rights acquired prior to January 1, 1980.
The appellant urges that the trial court’s judgment denies him due process and equal protection of law if he is denied the right to seek reimbursement and contribution from his former wife as provided under the equal management provision of law. We find no merit to these contentions. In fact the appellee has raised constitutional objections to applying the new law to her on the ground that Act 709 of 1979 could not deprive her of her acquired right to renounce without providing reasonable time after January 1, 1980, within which to exercise the right. Appellee relies on Lott v. Haley, 370 So.2d 521 (La.1979); Green v. Liberty Mutual Ins. Co., 352 So.2d 366 (La.App. 4th Cir. 1977), writ refused, 354 So.2d 210 (La.1978); and Churchill Farms, Inc. v. Louisiana Tax Commission, 338 So.2d 963 (La.App. 4th Cir. 1976). In any event, we do not consider that due process or equal protection arguments may seriously be urged here. The community of acquets and gains involved here came into being upon the marriage of the parties in 1974. This marriage was terminated by judgment on De-eember 14, 1979, (retroactive to April 2, 1979). The marriage and subsequent dissolution occurred entirely under the head and master scheme of law. We believe, as we outlined above, that the obligations of the former spouses in this case are regulated by the law in effect when the community was terminated in 1979.
Alternatively, appellant contends that if Mrs. Wattigny’s right to renounce became fixed by the separation judgment of December 14,1979, she waived such right by an unreasonable delay in exercising the right. The law previously fixed no limitation on the time within which the right should be exercised. It existed until a judgment was pronounced against a wife as a partner in the community which previously existed between her and her husband. Cockburn v. Wilson, 20 La.Ann. 39 (1868). Moreover, the evidence in this case is unconvincing that the wife’s renunciation was unreasonably delayed.
For the foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendant-appellant.
AFFIRMED.

. The substance of the judgment reads:
“IT IS ORDERED, ADJUDGED AND DECREED, that there be Judgment herein in favor of plaintiff, Phyllis Wattigny, and against defendant, Robert Wattigny, declaring her renunciation of the community of acquets and gains, filed in the record of Iberia Parish on October 17, 1980 to be valid and effective within the meaning of Article 2410 of the Civil Code of 1870.”

. Under the former law the wife could preserve her option to a certain extent by accepting the community with the benefit of inventory. LSA-C.C. art. 2414 and LSA-R.S. 9:2821, repealed by Act 627 of 1978 and Act 709 of 1979 of the Louisiana Legislature (which itself repealed Act 627 of 1978) effective January 1, 1980.

. Samuel, “The Retroactivity Provisions of Louisiana’s Equal Management Law: Interpretation and Constitutionality,” 39 La.L.Rev. 347 (1979) and Spaht and Samuel, “Equal Management Revisited: 1979 Legislative Modifications of the 1978 Matrimonial Regimes Law,” 40 La.L.Rev. 83 (1979).

. Section 5 of Act 709 of 1979 of the Louisiana Legislature repealed Act 627 of 1978 in its entirety.

. In their article in 40 La.L.Rev. 83 cited in footnote 3 above, the authors state:
“The transitional provisions of Act 709, in contrast to those of Act 627, make no attempt to specify whether the new law is applicable to particular transactions, assets, or liabilities. When a retroactivity question arises, the court will first have to wrestle *779 with the legislative intent, an unnecessary step under Act 627 where the legislative intent on retroactivity was specified. The authors believe that the omission in Act 709 of these specifications does not represent any change in the legislative intent.”